The judgment of the United States Customs Court is *reversed*.

UNITED STATES v. BUTLER BROS. (No. 4488) [1]

[1] C. A. D. 310.

United States Court of Customs and Patent Appeals, May 24, 1945

*Paul P. Rao,* Assistant Attorney General (*Alfred A. Taylor, Jr.,* special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument April 12, 1945, by Mr. Taylor and Mr. Schwartz]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, holding certain china bonbon or candy dishes dutiable as ornamented or decorated chinaware at 70 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as claimed by the importer (appellee), rather than as tableware at 70 per centum ad valorem and 10 cents per dozen separate pieces under that paragraph, as assessed by the collector at the port of New York.

Paragraph 212 reads:

PAR. 212. China, porcelain, and other vitrified wares, including chemical porcelain ware and chemical stoneware, composed of a vitrified nonabsorbent

body which when broken shows a vitrified or vitreous, or semivitrified or semi-vitreous fracture, and all bisque and parian wares, including clock cases with or without movements, plaques, pill tiles, ornaments, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware, plain white, not painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 60 per centum ad valorem; painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 70 per centum ad valorem. In addition to the foregoing there shall be paid a duty of 10 cents per dozen separate pieces on all tableware, kitchenware, and table and kitchen utensils.

A sample of the imported merchandise was introduced in evidence as plaintiff's Exhibit No. 2. It consists of a china dish, having a wicker handle composed of bamboo. The dish, substantially in the shape of a saucer, is approximately 6 inches in width and is decorated with a floral design. The handle is attached to the dish through holes pierced on either side substantially below the rim.

On the trial in the court below, the record in the case of *Butler Bros.* v. *United States*, 6 Cust. Ct. 444, C. D. 512, was made a part of the record in the instant case, and it was agreed by counsel for the parties that the merchandise there involved was similar to the merchandise involved in the instant case, except for the size and shape of the dishes.

The merchandise involved in that case is represented by Exhibit No. 1, which consists of a china bowl having a wicker handle composed of bamboo. The bowl has scalloped edges, is approximately 7½ inches wide and 2¼ inches deep, and is decorated with a floral design. The handle is attached to the bowl through holes on opposite sides of the dish approximately ½ inch below the rim.

Counsel for the parties agree that the evidence contained in the incorporated record was accurately summarized in the trial court's decision in that case. We quote therefrom:

At the trial of this case nine witnesses testified for the plaintiffs. The first witness identified the sample as a part of the shipment in question and the remainder of the witnesses, all well qualified to testify as to the use of the articles in question and as to the manner in which they were bought and sold, were all agreed that the bonbon dishes in question were never used on the table in the service of meals, that they were never bought and sold as tableware or kitchenware and that the bonbon dishes were of the character of articles seen used upon an end table or occasional table for holding candy or nuts and passed around during the evening among guests, and that the articles are not of the character of tableware used upon the dining table during a meal or in the kitchen.

The defendant called two witnesses, the first a commercial witness, who testified that he had seen articles such as here in question used in the home as candy or fruit dishes "on tables," that he had seen them in different places in the home, such as in the living room and on dining-room tables, end tables, occasional tables, bridge tables, but he admitted, however, that he had never seen them used in connection with the service of meals.

The examiner of merchandise testified for the Government that it had been the practice for 5 years to advisorily classify bonbon dishes as not included in table-

ware or kitchenware and he followed that classification in his advisory notations although it was his personal belief at that time that the article consisted of tableware and at the present time such articles are classified as tableware in accordance with a bureau letter and T. D. 48935.

The court pointed out in its decision in that case that counsel for the Government contended that if the articles there involved were not dutiable as tableware or kitchenware, they were properly dutiable under the provision for "table and kitchen utensils." The court held that the merchandise there involved was not for table use in the serving of meals, and, therefore, was not within the common meaning of the term "tableware." The court then quoted dictionary definitions of the term "utensil" and stated that the merchandise there in question was not within the common meaning of that term, that the term "utensil" embraced only such articles as were "utilized in performing work or producing an effect, such as in the preparation of food or drink," and, accordingly, held that the merchandise was not-subject to the additional duty of 10 cents per dozen separate pieces under paragraph 212, supra.

In the instant case, counsel for the importer (appellee) called no witnesses, but relied upon the evidence in the incorporated record.

Counsel for the Government submitted the testimony of three witnesses.

The witness Harry J. Moscovitz, testifying for the Government, stated that he was the New York representative of the Paden City Pottery Co. of Paden City, West Virginia; that he had represented that company for over 25 years, during which time he had been selling "Dinnerware, tableware"; that he had sold articles similar to Exhibits 1 and 2, except that they had no handles; that he had seen articles similar to Exhibit 1, but without wicker handles, used in his home and in the home of a friend in New York City; that he had seen a dish without the wicker handle, otherwise similar to Exhibit 1, used for serving cereal and soup on "various tables, such as bridge tables, and even on dining room tables, kitchen tables, even an end table"; that he had seen articles similar to Exhibit 2, but without wicker handles, used as bread and butter dishes; and that he had seen dishes like Exhibits 1 and 2, with wicker handles, used for nuts and condiments of all kinds after dinner on dining-room tables and bridge tables. The witness further stated that at the time of the taking of his testimony he had a dish on his dining-room table similar to Exhibit 1, except that it had no handle. When asked whether he had ever had a dish similar to Exhibit 1 with a handle attached thereto on his dining-room table, he stated "Oh, I wouldn't say never."

The Government's witness Michael J. George stated that he was a New York sales representative of the Sebring Pottery Co. of Sebring, Ohio; that he sold dinnerware; that he had seen articles similar to Exhibits 1 and 2, without handles, used over a period of 25 years; that he

had seen articles similar to Exhibit 1, *without handles*, used for soup, cereals, and fruits on kitchen tables, dining-room tables, and bridge tables; that he had seen articles similar to Exhibit 2, *without handles*, used as butter dishes on kitchen tables, dining-room tables, and bridge tables; that he had seen articles similar to Exhibits 1 and 2, *with handles, used to serve nuts, mints, and candy, usually after dinner, on bridge tables;* and that *such use was the principal use of* dishes like those here in question.

The Government's witness Harry G. Heckmann, sales manager for the Salem China Co., Salem, Ohio, engaged in the sale of dinnerware, testified that he had sold articles similar to Exhibits 1 and 2; that a dish *without holes for a handle* and "without the handle [otherwise similar to Exhibit 1] is similar to a soup dish or small vegetable or cereal bowl"; that a dish *without holes for a handle and without the handle*, otherwise similar to Exhibit 2, is "substantially the same as a bread and butter plate"; that he had seen dishes *without handles and without holes for handles*, otherwise similar to Exhibits 1 and 2, used on dining-room tables; and that he had never seen dishes *with handles*, similar to Exhibits 1 and 2, used, although he had seen them offered for sale.

In its decision in the instant case the trial court stated that "A consideration of the evidence adduced in this case is convincing that bonbon and candy dishes with wicker handles are not used on the table for the service of meals and that *the chief use thereof is for after meal service at bridge tables, parties, etc.*," and held that the merchandise in question was not subject to the additional duty of 10 cents per dozen separate pieces provided for in paragraph 212, *supra*. [Italics supplied.]

It is contended here by counsel for the Government that the provisions for tableware and table untensils in paragraph 212, *supra*, were intended by the Congress to cover all chinaware "used on any table in the household whether or not used in the service of meals"; that, in accordance with the common meaning of the term "tableware," the provision for tableware in paragraph 212, *supra*, covers articles chiefly used on a table; that the term "tableware" was not intended by the Congress to be restricted to articles such as are chiefly used on the table during the service of meals; and that if the involved articles are not dutiable as tableware under the additional duty provisions of paragraph 212, *supra*, they are dutiable under those provisions as table or kitchen utensils. It is further argued by counsel for the Government that the decisions of this court in the cases of *I. W. Rice & Co.* v. *United States*, 24 C. C. P. A. (Customs) 114, T. D. 48415, and *F. W. Woolworth* v. *United States*, 26 C. C. P. A. (Customs) 221, C. A. D. 20, support the position of the Government in the instant case.

In the case of *I. W. Rice & Co.* v. *United States, supra,* this court held that the term "household utensils," contained in paragraph 339 of the Tariff Act of 1930, was intended by the Congress to include utensils used in the maintenance and care of the home, as well as those used in the household for the convenience and comfort of the members of such household, and that the atomizers there in question, in chief value of base metal, used to spray the body with powder after the bath, were household utensils within the meaning of that term as used in paragraph 339, *supra.*

In the case of *F. W. Woolworth* v. *United States, supra,* it was held that certain bridge-table novelties, consisting of "small, silver-finished metal animal figures of relatively heavy weight," each having a chain about 13 inches in length welded to its neck, were dutiable as "household utensils" under paragraph 339 of the Tariff Act of 1930.

We are unable to see how the decisions in the *Rice* and *Woolworth* cases, *supra,* support the views of counsel for the Government in the instant case.

Paragraph 339, *supra,* provides for "Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for." It will be observed that in that paragraph the Congress distinguished between table, household, and kitchen utensils.

Paragraph 212 of the Tariff Act of 1922, the predecessor of paragraph 212 here under consideration, did not contain the provision for an additional duty of "10 cents per dozen separate pieces on all tableware, kitchenware, and table and kitchen utensils."

At the time H. R. 2667, which later became the Tariff Act of 1930, was before the Senate for consideration, the following amendment to paragraph 212 was adopted by the Senate: "In addition to the foregoing there shall be paid a duty of 10 cents per dozen separate pieces on all tableware, kitchenware, and utensils." See Congressional Record, Vol. 72, part 6, pages 5791 to 5796. In the conference report (No. 1326), on behalf of the House of Representatives, it is stated on page 43 that the quoted Senate amendment was agreed to "with an amendment making it more clear that the utensils specified *are only table and kitchen utensils.*" [Italics ours.] The amendment referred to was the insertion of the words "table and kitchen" before the word "utensils."

The terms "tableware" and "utensil" are defined by the lexicographers as follows:

*tableware, n.* Ware, or articles collectively for table use. (Webster's New International Dictionary.)

*tableware, n.* Ware for table use; dishes, knives, forks, spoons, etc., collectively. (Funk & Wagnalls New Standard Dictionary.)

*Tableware.* Ware for the service of the table; a collective term for the articles which are used at meals, as dishes, plates, knives, forks, etc. (Oxford, A New English Dictionary on Historical Principles, 1919, Vol. IX.)

*tableware, n.* Ware for use at table; the articles collectively which may be put upon the table for the service of meals. (Century Dictionary & Cyclopedia, 1911.)

*utensil, n.* An instrument or vessel, esp. one used in a kitchen or dairy. (Webster's New International Dictionary.)

*utensil, n.* Something that is used; a thing serving a useful purpose; formerly a thing of varied use; as, utensils of war or observation; now, more especially, an implement or vessel for domestic or farming use; as kitchen utensils. (Funk & Wagnalls New Standard Dictionary.)

We think it is evident from the dictionary definitions of the term "tableware" that in using that term in paragraph 212, *supra*, the Congress intended to provide for only such articles as are chiefly used upon a table for the service of meals, and that it was not intended to cover novelty articles, such as the involved bonbon and candy dishes, which are not chiefly used in the service of meals but, according to the testimony of record, are used on bridge tables and occasional tables for serving candy, nuts, etc., after a meal.

We come now to a consideration of whether the involved articles are "table * * * utensils" within the meaning of that term as used in paragraph 212, *supra*. In our consideration of that question we assume for the purpose of this decision, but do not hold, that they are utensils within the common meaning of that term.

As hereinbefore noted, the amendment to paragraph 212 of H. R. 2667, *supra*, as originally adopted by the Senate provided an additional duty of 10 cents per dozen pieces on "tableware, kitchen ware, and utensils." It will be observed that the term "utensils" as used in the amendment was sufficiently broad to cover *all china utensils*. However, it is stated in the conference report, hereinbefore referred to, that the Senate amendment was amended to make it "more clear that the utensils specified are *only table and kitchen utensils*." [Italics ours.] We are of opinion, therefore, that the term "table utensils" should be interpreted in the light of the meaning of the provision for "tableware," and that the Congress did not intend that the additional duty of 10 cents per dozen pieces should apply to utensils composed of china which might properly be termed "household utensils," as distinguished from "table" and "kitchen utensils."

It is clear, we think, from the testimony of record that the involved articles are not "table utensils" within the meaning of that term as used in the additional-duty provisions of paragraph 212, *supra*.

For the reasons herein stated, the judgment is *affirmed*.